[No. 12050.   Department Two.   November 16, 1914.]

PETER MANSON, *Trustee, Appellant,* v. ARTHUR M. HUNT
*et al., Respondents.*[1]

MONOPOLIES—CONTRACTS—VALIDITY—CONSTITUTIONAL PROVISIONS—CONSTRUCTION. A contract between two steamship companies operating boats between the same points, whereby one, in consideration of $1,500, agreed to withdraw its boats from the route for a period of three years, contravenes Const., art. 12, § 22, prohibiting monopolies and providing that no incorporated company shall directly or indirectly combine or make any contract with another for the purpose of fixing the price, or limiting the production, or regulating the transportation of any product or commodity.

CONTRACTS—VALIDITY—PUBLIC POLICY—RESTRAINT OF COMPETITION—RELIEF. A note based upon a contract, knowingly made in restraint of trade, which so recited and showed that the note was part of the contract, is void as against public policy, and will not be enforced by the courts.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered May 28, 1913, upon the verdict of a jury rendered in favor of the defendants, in an action on contract. Affirmed.

*Ralph Woods (Chas. L. Westcott,* of counsel), for appellant.

*H. W. Lueders,* for respondents.

MOUNT, J.—This action was brought by the appellant to recover upon a promissory note executed by the defendants. The complaint is in the usual form. The defendants, in answer to the complaint, admit the signing of the note, but

[1]Reported in 144 Pac. 45.

deny that it was rightfully delivered to the plaintiff. As
an affirmative defense, the defendant alleged, in substance,
that about the 1st day of April, 1909, the plaintiff, repre-
senting the Vashon Navigation Company, a corporation,
and the defendants, representing the Tacoma-Burton Navi-
gation Company, agreed that, in consideration of $1,500, to
be paid by the Vashon Navigation Company to the Tacoma-
Burton Navigation Company, the latter company would not
run its boats between the city of Tacoma and Quartermaster
Harbor. That, when the money was about to be paid to the
defendants, all the parties were advised that the agreement
could not be enforced, because it was contrary to public
policy. That thereupon the plaintiff, as trustee for the
Vashon Navigation Company, paid $1,500 to the defendants,
and a note was given, according to the terms of a contract
which was then entered into between the parties. This con-
tract is attached to the answer and is made a part of it. It
recites that:

"Whereas, the parties of the first part have executed and
delivered to the party of the second part their joint and sev-
eral promissory note of even date herewith for the sum of
fifteen hundred dollars; and

"Whereas the party of the second part has this day loaned
to the parties of the first part the sum of $1,500, lawful
money of the United States, for which loan the note aforesaid
was given; and

"Whereas all the parties hereto recognize that the special
subject-matter of this agreement is not capable of enforce-
ment in any court of law or equity and that the carrying out
of this agreement rests only upon the personal honor and
probity of the parties hereto as gentlemen;

"Now, THEREFORE, the parties hereto have agreed as fol-
lows:"

Then follows an agreement to the effect that the note
should be deposited with Frank H. Kelley, to be held by him
for a period of three years or less; that in the event the Ta-
coma-Burton Navigation Company, or any of its stock-
holders should maintain or operate any craft for the car-

riage of either passengers or freight between any point in the city of Tacoma and any point on Quartermaster Harbor, then the note forthwith should be delivered to the party of the second part, the plaintiff in this action; and that after certain notice the note should become immediately due and payable. The contract then contains this provision:

"The parties hereto as gentlemen agree that in any litigation which may arise in connection with the enforcement of the obligation of said note, no reference to this agreement or its special subject-matter shall be made in pleading, testimony or otherwise."

The contract then provided that, in case the defendants did comply with the agreement, that the note should be canceled and considered as paid in full. The answer then alleged that the defendants had fully complied with the agreement. For reply, the plaintiff admitted the making of the contract, and alleged that the note sued upon was independent of that contract.

On these issues, the cause was tried to the court and a jury. A verdict was returned in favor of the defendants. Special findings were made to the effect that the note was given as a consideration for the execution of the contract, and that the note and contract were executed at the same time as a part of the same transaction, and that defendants had not violated the contract. Upon a judgment dismissing the action, the plaintiff has appealed.

It appeared in evidence that, prior to April 1, 1909, which was the date of the contract and note, the Vashon Navigation Company operated a steamboat between Tacoma and points on Quartermaster Harbor, which is about 12 or 15 miles distant from Tacoma. During this time, the Tacoma-Burton Navigation Company also maintained and operated a steamboat between the same points. Shortly before that date, the respondents and the appellant agreed that, upon payment of $1,500 by the appellant to the respondents, the respondents would withdraw their steamboat from the run and

would agree not to operate that or any other craft for three years.

The parties consulted an attorney with reference to preparing a contract in accordance with the agreement, and were advised that the proposed contract would be void as against public policy; that, if the money were paid, there would be no security that the contract could be enforced. Upon this advice, it was sought by the parties to circumvent the constitution, and they then agreed that the money should be paid as a loan and the note given as a part of the contract; that this note should be placed in escrow and delivered to the plaintiff upon the failure of the defendants to comply with the contract; or in case the contract was complied with, at the end of three years, the note was to be delivered to the defendants and considered fully paid. The contract, which is a part of the record in the case, is to that effect.

The court instructed the jury that the contract was in violation of art. 12, § 22 of the constitution. This provision of the constitution is as follows:

"Monopolies and Trusts.—Monopolies and trusts shall never be allowed in this state, and no incorporated company . . . in this state shall directly or indirectly combine or make any contract with any other incorporated company . . . for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity."

It is argued by the appellant that the court erred in instructing the jury that this contract was in violation of this provision of the constitution. *California Steam Nav. Co. v. Wright*, 6 Cal. 258, is cited in support of the contention that this contract does not violate this provision of the constitution. The California cases cited were decided under the common law. It does not appear that California at that time had a constitution the same as ours. We are satisfied that our constitution in the section quoted prohibits contracts which provide for monopolies regulating the transportation

of any product or commodity.   It is conceded in this case
that these two companies were public carriers, carrying pas-
sengers and freight between the points named.   The contract
in question was clearly a contract in violation of this pro-
vision of the constitution, because it in effect provided that
the Vashon Navigation Company, should have a monopoly
of the business between these points.   It simply purchased
the right of the Tacoma-Burton Navigation Company to
maintain its boats upon that line in order that it might limit
and regulate the transportation of freight and passengers
between the points named.

"A contract between corporations charged with a public
duty, such as that of common carriers, providing for the
formation of a combination having no other purpose than
that of stifling competition and providing means to ac-
complish that object, is illegal and against public policy."
Ray, Contractual Limitations, p. 242, and cases cited.

Furthermore, the parties to this contract treated it from
beginning to end as a contract in restraint of competition.
The contract shows upon its face that they so considered it,
because it recites:

"The parties hereto recognize that the special subject-
matter of this agreement is not capable of enforcement in
any court of law or equity."

They entered into the contract knowing that it was against
public policy; they were previously advised of that fact;
and in substance recited the fact in the contract.   They well
knew they were entering into an illegal transaction.   In *Lewer
v. Cornelius*, 72 Wash. 124, 129 Pac. 911, we said at page
129:

"A court will not knowingly aid in the furtherance of an
illegal transaction.   And in harmony with this principle, it
does not concern itself as to the manner in which the illegal-
ity of a matter before it is brought to its attention.   If such
illegality appears in the pleadings of either party, it will
not inquire into the technical accuracy of such pleading; if
it appears in the statement of witnesses at the trial, it will

not inquire into the technical admissibility of such statement as evidence, but will, in either case, start an inquiry of its own, and if it be found that the differences which it is called upon to adjudicate arise out of an illegal transaction, it will leave the parties where it found them, to work out their differences as best they may." (Citing authorities.)

We are satisfied, therefore, that the plaintiff ought not to recover in this action. The evidence in the case very clearly shows, in fact the contract itself shows, that the note in question was a part of the contract, and was given to circumvent the constitution. It was therefore illegal and of no force.

The appellant presents other questions which we shall not notice because, from what has been said above, it is plain that the plaintiff was not entitled to recover upon the note.

The judgment is therefore affirmed.

CROW, C. J., MAIN, FULLERTON, and ELLIS, JJ., concur.